# UNITED STATES DISTRICT COURT
# IN THE WESTERN DISTRICT OF MICHIGAN

MPUTU BUMANYI as
Personal Representative for
THE ESTATE OF LUKUMBA MBLIZI (deceased),

    *Plaintiff*

v.

INGHAM COUNTY, OFFICER JOHN DOE,
in his individual and official capacities as an
Ingham County police officer; OFFICER JANE DOE,
in her individual and official capacities as an Ingham
County police officer; VITAL CORE HEALTH STRATEGIES,
DR. GLENN CIPULLO, MD; MARLEIGH
ELIZABETH LEWIS, RN; NICOLE EMANUEL, LPN;
JESSICA STAGE, RN,
    *Defendants.*

---

CHRISTIN M. DEWBERRY(P88249)
AYANNA D. HATCHETT (P70055)
VERNON R. JOHNSON(P39219)
CHRISTOPHER P. YATES (P41017)
VEN JOHNSON LAW, PLC
Attorneys for Plaintiff
1240 Woodward Ave Ste 535
Detroit, MI 48226
P: 313.324.8300/ F: 313.324.8301
cdewberry@venjohnsonlaw.com
ahatchett@venjohnsonlaw.com
vjohnson@venjohnsonlaw.com

---

## COMPLAINT & JURY DEMAND

*There are no other pending or resolved civil
actions arising out of the same transaction
or occurrence as alleged in this Complaint.*

**NOW COMES** Plaintiff, Mputu Bumanyi as the Personal Representative for The Estate of Lukumba "Patrick" Mblizi (deceased), by and through counsel, complaining of Defendants, and alleges as follows:

### JURISDICTION & VENUE

1.     In this civil action, Plaintiff Mputu Bumanyi as The Personal Representative for The Estate of Lukumba Mblizi ("Plaintiff") seeks damages for the violations of Lukumba "Patrick" Mblizi's ("Patrick") rights secured by the United States Constitution; the law of the United States, including but not limited to 42 U.S.C. § §1983 and 1988; as well as Michigan state law.

2.     Jurisdiction of this Court is found upon 28 U.S.C. § 1331, 1343(a)(4) and 42 U.S.C. § §1983 and 1988.

3.     The events that give rise to this lawsuit took place in Ingham County, which is in the Western District of the state of Michigan.

4.     Venue is appropriate in the Western District of Michigan pursuant to 28 U.S.C. § 1391 (b) because Ingham County is in the Western District of Michigan, the Defendants are employees of the Ingham County Sheriff's Office, and the events that give rise to the lawsuit took place in Mason, Michigan.

5.     The amount in controversy exceeds $75,000.00 exclusive of costs, interest, and attorney fees.

### PARTIES

6.  Each of the above paragraphs incorporated here.

2

7. Plaintiff Mputu Bumanyi ("Plaintiff") was at all times relevant to this cause of action located in the City of Mason, County Ingham, State of Michigan.

8. Lukumba "Patrick" Mblizi ("Patrick") died on April 21, 2024, as a direct result of his care and medical treatment while housed at the Ingham County Jail.

9. Plaintiff was appointed as the Personal Representative for The Estate of Patrick on September 5, 2024, by the Ingham County Probate Court.

10. At all pertinent times, Defendant Ingham County ("Ingham") was a political subdivision of the State of Michigan and has a legal duty to enact and enforce policies, procedures, protocols, and customs that conform with the Constitution and laws of the State of Michigan, as well as the United States.

11. At all pertinent times, Defendants John and Jane Doe ("Jailers") were employees of Defendant Ingham County through the Ingham County Sheriff's Office and were acting under the color of law and in the course and scope of their employment.

12. At all Pertinent times, Defendant Vital Core Health Services ("Vital Core") was a contractor, contracted to work at the Ingham County Jail by Defendant Ingham. Vital Core was working under the direction of Defendant Ingham.

13. At all pertinent times, Defendant Glenn Cipullo, MD ("Dr. Cipullo") was an employee of Vital Core, a contractor employed by Defendant Ingham and was acting in the course of his employment.

3

14. At all pertinent times, Defendant Marleigh Elizabeth Lewis, RN ("Lewis") was an employee of Vital Core, a contractor employed by Defendant Ingham and was acting in the course of her employment.

15. At all pertinent times, Defendant Nicole Emanuel, LPN ("Emanuel") was an employee of Vital Core, a contractor employed by Defendant Ingham and was acting in the course of her employment.

16. At all pertinent times, Defendant Jessica Stage, RN ("Stage") was an employee of Vital Core, a contractor employed by Defendant Ingham and was acting in the course of her employment.

### FACTUAL ALLEGATIONS

17. Each of the above paragraphs are incorporated here.

18. On January 23, 2024, thirty-four-year-old Patrick was arrested and brought into custody at Ingham County Jail for alleged charges of aggravated/felonious assault on a police officer with a gun.

19. When Patrick arrived, he underwent a "Medical & Behavioral Health Admission Care Screen" conducted by Defendant Emanuel, which indicated no health or behavioral health issues. [1]

20. On February 29, 2024, Patrick wrote a KITE to the jail requesting medical care Patrick reported "I been having problems seeing my eye have something white in it and it keeps getting bigger."

---

[1] There is no record that Patrick had diabetes or experienced diabetic symptoms at the time of his intake.

21.     Defendant Lewis scheduled a "provider visit" and responded to Patrick's KITE stating, "You have been added to the sick call list and will be seen as soon as possible."

22.     On March 5, 2024, approximately one week later Patrick was seen by Defendant Dr. Cipullo.

23.     Upon information and belief, Defendant John and Jane Doe ("Jailers") escorted Patrick to be evaluated by Defendant Dr. Cipullo.

24.     Defendant Dr. Cipullo diagnosed Patrick with pinguecula—a common, harmless bump on the eye at his exam. Cipullo prescribed Patrick Tetrahydrozoline (also known as Visine) and Prednisone10 mg (an oral steroid)[2].

25.     On March 9, 2024 at 8:15 p.m., Patrick wrote another KITE requesting medical attention stating "the cyst on my iris continues to grow and as it does it itches and hurts. [W]hen I blink or close my eyes going to sleep is becoming more and more difficult. The medication I am receiving here is not working the problem is consistent and growing worse day by day. I need outside medical attention immediately before irreversible damage is done to my left eye."

26.     Patrick wrote another KITE on March 9, 2024 at 8:19 p.m., which stated that the eye drops he was prescribed were not helping, that the "cyst" is getting bigger and bigger, and that sleeping "is becoming impossible."

---

[2] Oral prednisone is an anti-inflammatory immunosuppressant meaning it reduces inflammation at the cost of suppressing the immune system—making it more difficult for the body to fight infection. In addition to weakening the immune system, Prednisone can also cause hyperglycemia (i.e. DKA) even in someone who was not diabetic beforehand.

27.    Defendant Lewis responded to Patrick's 8:19 p.m., KITE stating that he was not coming to the morning medical cart and for that reason the medication could not work as it's supposed to.

28.    Two days later Defendant Stage responded to Patrick's 8:15 p.m., KITE stating that Patrick had been seen on March 5, 2024, and that he would be on the list to be seen by the provider again. The response also indicated that Patrick needed to "wake up and come to the med cart to get the full dose of his medication."

29.    On March 11, 2024, Patrick's prescription for Prednisone 10 mg was increased to Prednisone 20 mg, with no medical evaluation.

30.    On March 20, 2024, approximately fifteen days after Patrick had been evaluated by Defendant Dr. Cipullo, and eleven days since Patrick last wrote to the jail requesting medical treatment, Patrick's prescription for prednisone was discontinued.

31.    There is no note or record found in the Vital Core records indicating the reasoning behind the decision to increase Patrick's dose of Prednisone nor to take him off of Prednisone.

32.    Upon information and belief, the Jailers encountered Patrick daily during rounds, tray pass, medication distribution, etc.

33.    On March 25, 2024 at approximately 11:46 a.m., five days following the discontinuation of the Prednisone, Patrick wrote another KITE to Defendant Ingham requesting medical treatment.

34.    Patrick expressed, in his KITE, previous attempts to be seen, "Since Saturday I been trying to see someone for the pain I have when I breath it hurts all the way up my left side I can't sleep it hurts to move fe[e]l like when I breath[e] I'm being stab[bed] and been seeking help since Saturday and haven't gotten any."

35.    On March 25, 2024, at 1:55 p.m., Defendant Lewis responded, stating that she did not see a KITE from Patrick over the weekend but would add him to the sick call list to be seen as soon as possible.

36.    Patrick was finally evaluated by Dr. Cipullo on March 25, 2024 at approximately 2:49 p.m.

37.    It should be noted that this evaluation comes twenty days after Patrick's initial complaint, sixteen days after Patrick's first request for medical treatment, and five days after his prescription had been unexplainably discontinued.

38.    According to Defendant Dr. Cipullo's medical note, during his medical examination he was unable to properly assess Patrick's lung sounds due to Patrick's failure to take full breaths.

39.    Upon information and belief, Dr. Cipullo made the decision to send Patrick out to the Emergency room to have x-rays done to rule out pneumonia.

40.    On March 25, 2024 at approximately 3:30 p.m. Patrick was transported by ambulance to U of M Sparrow Hospital.

41.     Upon admission Patrick was noted as a "34 y.o. male with a past history of splenectomy in 2021." [3]

42.     Patrick informed Sparrow ER that his symptoms began three days ago and had worsened since.

43.      Sparrow's vitals check indicated Patrick's glucose level was 444. [4] Patrick indicated he had not previously been diagnosed with diabetes.

44.     Sparrow E.R. diagnosed Patrick with diabetic ketoacidosis, septic shock, and acute respiratory failure.

45.     Due to Patrick's respiratory deterioration, he was intubated and sedated on March 27, 2024.

46.     Patrick remained on life support for twenty-one days before his family made the decision to honor the "do not resuscitate" and "do not intubate" orders the hospital had on file.

47.     Patrick was pronounced deceased on April 21, 2024.

48.     According to the first autopsy done by Dr. David Moons of University of Michigan Health-Sparrow, Patrick's cause of death was necrotizing pneumonia with bacteremia. [5]

---

[3] A splenectomy makes an individual more susceptible to infection because the spleen helps produce white blood cells, which help fight blood infections. https://www.oncolink.org/cancers/lymphomas/hodgkin-lymphoma-hodgkin-s-disease/treatments/survivorship-health-concerns-after-splenectomy.

[4] A normal glucose level is 99 mg/dL. Anything over 100 is considered abnormal. https://www.ynhhs.org/articles/what-is-healthy-blood-sugar. Glucose levels over 400 indicate a condition called hyperglycemia which can cause diabetic ketoacidosis (DKA). DKA is a life-threatening complication that requires immediate medical attention. Symptoms of DKA include unusually rapid deep breathing, abdominal pain, etc. Failure to treat DKA can result in diabetic coma or death. https://www.everydayhealth.com/diabetes/blood-glucose-levels-above-400/.

[5] Necrotizing pneumonia with bacteremia is a bacterial lung infection that destroys and liquifies lung tissue. https://pmc.ncbi.nlm.nih.gov/articles/PMC11597800/. "With bacteremia" indicates that the infection spread beyond the lungs and into the bloodstream. https://my.clevelandclinic.org/health/diseases/25151-bacteremia.

**COUNT I- DELIBERATE INDIFFERENCE VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983—GLENN CIPULLO, MD, MARLEIGH ELIZABETH LEWIS, JESSICA STAGE, AND DEFENDANT OFFICER JOHN AND JANE DOE**

49.     Each of the above paragraphs are incorporated here.

50.     Defendants Cipullo, Lewis, Stage, Emanuel, and Jailers at all times relevant to this cause of action were acting within their employment.

51.     Patrick at all times relevant to this cause of action was afforded the constitutional rights under the Eight and Fourteenth Amendment to the United States Constitution to adequate and sufficient medical care and/or treatment such that his life would be preserved and he at all times would be free from needless unjustified and preventable pain, suffering, deterioration of his health and well-being, and ultimately his death.

52.     Patrick, while in custody of Ingham County Jail, suffered from a serious medical condition for which he had sufficiently serious medical needs and from which he faced a substantial risk of serious harm. They did in fact draw this inference.

53.     Defendants Cipullo, Lewis, Stage, Emanuel, and Jailers knew or should have known of facts from which an inference could be drawn that Patrick faced a substantial risk of serious harm due to his serious medical needs.

54.     According to the Vital Core records Defendant Emanuel conducted Patrick's initial medical screening and failed to obtain important medical history. Including but not limited to Patrick's history of a splenectomy.

9

55. Defendant Emanuel knew or should have known that having an accurate record of a detainee's medical history was crucial for providing medical treatment.

56. Upon information and belief, Defendants Lewis and Stage were responsible for monitoring and responding to Patrick's KITE.

57. Defendants Lewis and Stage knew or should have known that Patrick was experiencing a medical emergency that required immediate medical attention.

58. Despite this knowledge Lewis and Stage failed to respond.

59. Defendant Lewis received Patrick's request for medical attention on February 29th and failed to ensure Patrick received prompt medical treatment.

60. Officer Lewis and Stage continued to show disregard for Patrick's substantial risk of medical harm when they failed to ensure Patrick was evaluated for twenty days despite multiple requests by Patrick.

61. Defendant Jailers failed to facilitate necessary medical examination despite an obvious need for Patrick to be seen, and multiple attempts made by Patrick to be seen.

62. Following Patrick's February 29th complaint of "problems seeing out of his eye," Defendant Cipullo evaluated Patrick on March 5, 2024, and identified a growth on Patrick's eye. He diagnosed this growth as pinguecula.

63. Defendant Cipullo prescribed Tetrahydrozoline (Visine) & Prednisone 10 mg to address what he believed at the time to be pinguecula.

64. Defendant Cipullo failed to follow up with Patrick to see whether the prescribed medication reduced the discomfort Patrick complained of.

65. Defendant Cipullo knew or should have known that symptoms associated with pinguecula are reduced with the use of eye drops. The fact that they were not in this case should have been an indication to Cipullo that Patrick needed a subsequent evaluation.

66. Defendant Cipullo showed a disregard for the substantial risk of harm Patrick faced, despite Patrick's attempt to communicate the significance of his harm.

67. Patrick requested to be seen by the medical staff on three separate occasions before he was actually evaluated for a second time by Defendant Cipullo.

68. Defendant Cipullo knew or should have known that increasing Patrick's Prednisone dosage could put Patrick at risk of a serious medical emergency.

69. Defendant Cipullo showed a disregard for the substantial risk of harm changing Patrick's prescription could cause him.

70. Defendant not only doubled Patrick's dosage without a note or explanation why, he also failed to follow up with Patrick to evaluate how the change in dosage was affecting Patrick.

71. Upon information and belief, a substantial increase in Prednisone increases an individual's risk of experiencing side effects such as high blood sugar, trouble sleeping, etc. All of which Patrick complained of.

72.    Defendant Cipullo knew or should have known that increasing Patrick's Prednisone dosage could cause side effects that could create a serious risk of a medical emergency.

73.    Despite this knowledge and expertise, Defendant Cipullo did not follow up with Patrick or evaluate him for any of the side effects this dosage adjustment could cause.

74.    Only five days after doubling Patrick's dose of Prednisone, Defendant Cipullo authorized the discontinuation of Prednisone.

75.    Defendant Cipullo knew or should have known that the sudden discontinuation of such a high dose of Prednisone would cause substantial risk of a medical emergency.

76.    Only after Patrick complained of chest pain was he evaluated by Defendant Cipullo.

77.    Defendants Cipullo, Lewis, Stage, and Emanuel failed to evaluate Patrick in a timely manner.

78.    Defendants Cipullo, Lewis, Stage, Emanuel, and Jailers knew or should have known that Patrick faced a substantial risk of serious harm because he consistently complained of pain, irritation, and discomfort in his left eye (even after provided medication to alleviate his symptoms), and because he was prescribed doses of medication that had a heightened risk of harmful side effects. Yet and still, Defendant Cipullo failed to evaluate Patrick and/or instruct his staff to evaluate Patrick.

79.    Defendants Cipullo, Lewis, Stage, Emanuel, and Jailers's actions and/or inactions as described above constitute deliberate indifference to Patrick's serious medical needs in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

80.    The right to be free from deliberate indifference to serious medical needs was at all times relevant to this cause of action clearly established such that a reasonable actor in Cipullo, Lewis, Stage, Emanuel and the Jailers's position knew or should have known and understood that his actions or inactions as described above violated Patrick's constitutional rights.

81.    Defendant Jailers are not entitled to qualified immunity.

82.    As a direct and proximate result of the deliberate indifference as described above, Patrick suffered damages, both economic and non-economic, severe physical, psychological, emotional injuries, and those damages include, but are not limited to the following:

    a.  Physical pain and suffering;
    b.  Mental anguish
    c.  Fright and shock;
    d.  Denial of social pleasure and enjoyments;
    e.  Embarrassment, humiliation, and mortification;
    f.  Reasonable expenses of necessary medical care, treatment and services;
    g.  Loss of earnings;
    h.  Loss of earnings capacity;
    i.  Death; and
    j.  Any and all injuries or damages that are learned through the course of discovery.

83.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages

allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendants, this Court should order and award additional damages to be allowed so as to satisfy any and all such inadequacies.

84. The actions of Defendants Cipullo, Lewis, Stage, Emanuel and Jailers as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm of Patrick. As a result of such intentional conduct, Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendant and to deter others from conduct.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgement in favor and against Defendants, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

### COUNT II—MUNICIPAL/SUPERVISORY LIABILITY PURSUANT TO 42 U.S.C. § 1983—DEFENDANTS AND INGHAM COUNTY

85. Each of the above paragraphs are incorporated here.

86. Pursuant to 42 U.S.C. § 1983, as well as the Eighth and Fourteenth Amendments to the United States Constitution, Defendant Ingham owed Patrick certain duties to properly hire, supervise, monitor, and train its employees and officers so as not violate the constitutional rights of individuals, and Patrick in particular and as alleged throughout this Complaint, and to take proper measures to report, prevent, or otherwise protect individuals such as Patrick in the event that such violations occur.

87.    Defendant Ingham is liable pursuant to 42 U.S.C. § 1983, in that its policies, procedures, regulations, and customs, or that its failure to enact policies, procedures, regulations, and customs, such that those policies, procedures, regulations, and customs caused and were the driving force behind the violation of Patrick's constitutional rights as alleged throughout this Complaint.

88.    Defendant Ingham was deliberately indifferent to Patrick's constitutional and other rights by failing to promulgate a policy and failing to properly train its personnel and employees to prevent the violation of individuals' constitutional rights, and in particular to provide or facilitate prompt and immediate medical attention to Patrick and/or transport to a hospital in response to a known risk of serious harm due to serious medical needs.

89.    Defendant Ingham was deliberately indifferent to Patrick's constitutional and other rights by failing to train and supervise its personnel and employees when they knew of specific and repeated acts and violations of Patrick's constitutional violations.

90.    Ingham should have had policies and procedures that directed employees on how to respond to detainees' requests for medical care and to facilitate necessary treatment.

91.    Defendant Ingham failed to properly train its officers regarding such procedures and such failure was the driving force behind the violation of Patrick's constitutional rights as alleged throughout this Complaint.

92.     Defendant Ingham failed to properly train its independent contractors and their staff regarding the policies and procedures that should be followed when handling detainees experiencing serious medical conditions.

93.     Had Ingham properly trained and supervised its employees and agents regarding those policies and procedures; the individual Defendants would have secured the medical care for Patrick that he was entitled to under the terms of the Eighth and Fourteenth Amendments to the United States Constitution and he would not have suffered the significant injuries and ultimately death as outlined with this complaint.

94.     Defendant Ingham, through its policies, procedures, regulations, or customs, or lack thereof breached its duties, which amounted to reckless and/or deliberate indifference toward the general public, and toward Patrick specifically, in the following ways including but not limited to:

    a. Failing to properly train its employees regarding responding to and providing medical care in response to a known serious medical need of detainees;
    b. Employing and retaining improperly trained employees;
    c. Failing to enact or provide training on proper policies in regard to responding to and providing medical care in response to a known serious medical need of prisoners and/or detainees;
    d. Failing to enact or provide training on proper policies;
    e. Failing to have proper policies, procedures, and training regarding responding to and providing medical care in response to a known serious medical need or prisoners and/or detainees;
    f. Failure to hire and/or retain employees whose character and personality would not pose a potential violation of individuals' constitutional rights;
    g. Failure to adequately monitor the conduct and behavior of its officers;
    h. Sanctioning the conduct as alleged throughout this Complaint by failing to adequately discipline or terminate employees who are known to have engaged in such conduct;

    i. Having a custom, policy, or practice of tolerating the violation of constitutional rights by employees:

    j. Ratifying the violation of constitutional rights by employees;

    k. Other acts and omissions which may be learned through the course of discovery.

95. As a direct and proximate result of the deliberate indifference as described above, Patrick suffered damages, both economic and non-economic, severe physical, psychological, emotional injuries, and those damages include, but are not limited to the following:

    a. Physical pain and suffering;

    b. Mental anguish

    c. Fright and shock;

    d. Denial of social pleasure and enjoyments;

    e. Embarrassment, humiliation, and mortification;

    f. Reasonable expenses of necessary medical care, treatment and services;

    g. Loss of earnings;

    h. Loss of earnings capacity;

    i. Death; and

    j. Any and all injuries or damages that are learned through the course of discovery.

96. Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendants, this Court should order and award additional damages to be allowed so as to satisfy any and all such inadequacies.

97. The actions of Defendant Ingham as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm to Patrick. As a result of such intentional conduct, Plaintiff is

17

entitled to punitive damages in an amount sufficient to punish Defendant Ingham and to deter others from like conduct.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgement in favor and against Defendants, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

### COUNT III—GROSS NEGLIGENCE DEFENDANTS JAILER'S AND INGHAM COUNTY

98. Each of the above paragraphs are incorporated here.

99. Defendants John and Jane Doe owed Patrick a duty as officers to act in a reasonable manner and not in a grossly negligent manner, to act prudently and with reasonable care, and to avoid conduct to create or increase the likelihood that Patrick would suffer harm.

100. Defendants John and Jane Doe owed Patrick a duty to act in a reasonable manner and not in a grossly negligent manner, to act prudently and with reasonable care, and to avoid conduct to create or increase the likelihood that Patrick would suffer harm.

101. Defendants John and Jane Doe failed to monitor Patrick in such a way that they were aware of the medical emergency he was experiencing.

102. Upon information and belief, Defendants John and Jane Doe permitted Patrick to use the kiosk/system to request medical treatment.

103.    Upon information and belief, Defendants John and Jane Doe monitored Patrick while he was housed at Ingham County Jail and became aware of his health concerns and requests for medical treatment.

104.    Defendants John and Jane Doe were grossly negligent and acted so recklessly as to demonstrate a substantial lack of concern that harm would result, and/or acted in an unnecessary or willful or wanton manner toward Patrick and was so indifferent to the risk that Patrick would be severely injured from being denied prompt and immediate medical and/or transport to a hospital in response to a known risk of serious harm due to serious medical needs.

105.    Defendants John and Jane Doe owed Patrick a duty to ensure that he received the necessary medical attention due to his emergent medical condition.

106.    Defendants John and Jane Doe breached the above duties in a number of ways.

107.    Defendants John and Jane Doe's conduct as set forth above was the proximate cause of Patrick's harm.

108.    The most immediate, efficient, and direct cause of Patrick's harms and eventual death was Defendants John and Jane Doe's failure to provide prompt and immediate medical and/or transport in response to a known risk of serious harm due to serious medical needs.

109. As the direct and proximate result of Defendant John and Jane Doe's gross negligence, Patrick suffered damages, both economic and noneconomic, severe

19

physical, psychological, emotional injuries, and those damages include, but are not limited to, the following:

    a. Physical pain and suffering;
    b. Mental anguish
    c. Fright and shock;
    d. Denial of social pleasure and enjoyments;
    e. Embarrassment, humiliation, and mortification;
    f. Reasonable expenses of necessary medical care, treatment and services;
    g. Loss of earnings;
    h. Loss of earnings capacity;
    i. Death; and
    j. Any and all injuries or damages that are learned through the course of discovery.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgement in favor and against Defendants, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

### COUNT IV—MEDICAL MALPRACTICE GLENN CIPULLO, M.D.

110. Each of the above paragraphs are incorporated here.

111. At all times pertinent to this complaint, the standard of care applicable to Glenn Cipullo, M.D., required him to maintain the standard of care his peers within the professional community of internal medicine. The requirements of the standard of care included but were not limited to the following:

    a. Evaluate and/or treat Patrick in a timely manner.
    b. Properly document the encounters with
    c. Ensure that the appropriate medications were prescribed.
    d. Ensure that Patrick timely underwent an electrocardiogram.
    e. Ensure that Patrick received the appropriate evaluation given his persistent complaint of chest pain.
    f. Adequately assess Patrick's response to the medication prescribed.
    g. Adequately evaluate Patrick's medical history.

h. Ensure Patrick was timely triaged.

i. Timely appreciate that Patrick's complaints to intake staff indicated that he was suffering from a serious medical emergency.

112. Dr. Cipullo breached the standard of care in the following manner set forth below:

a. Failed to evaluate and/or treat Patrick.

b. Failed to ensure that Patrick's complaints were timely evaluated and/or treated.

c.  Failed to properly document patient encounters.

d. Failed to appropriately prescribe the medication.

e. Failed to conduct the appropriate evaluations, based on Patrick's complaints.

f. Failed to perform an electrocardiogram based on Patrick's complaints of chest pain.

g. Failed to order and review a chest x-ray when the patient first complained of chest pain.

h. Failed to appropriately document and assess Patrick's response to the medication provided.

i. Failed to conduct the appropriate testing on Patrick following his complaints of chest pain.

j. Improperly administered medication without full knowledge of Patrick's blood sugar.

113. Dr. Cipullo was required to take the following actions to achieve compliance with the standard of care:

a. Should have evaluated and/or treated Patrick.

b. Should have to ensured that Patrick's complaints were timely evaluated and/or treated.

c. Should have properly documented patient encounters.

d. Should have appropriately prescribed the medication.

e. Should have conducted the appropriate evaluations, based on Patrick's complaints.

f. Should have performed an electrocardiogram based on Patrick's complaints of chest pain.

g. Should have ordered and reviewed a chest x-ray when the patient first complained of chest pain.

h. Should have appropriately documented and assessed Patrick's response to the medication provided.

21

      i.  Should have conducted the appropriate testing on Patrick following his complaints of chest pain.

     j.  Should have properly administered medication without full knowledge of Patrick's blood sugar.

114.   Each injury and element of damage noted below was factually and foreseeably caused by the standard of care violations of Dr. Cipullo as a representative of Vital Core Health Services at Ingham County jail. As such, Vital Core Health Services is vicariously liable for the negligent acts or omissions of Dr. Cipullo. (See Affidavit of Merit of Thomas Baird Mcllraith, M.D., SFHM, CLHM., **Exhibit 1**).

115.   Had Dr. Cipullo taken the steps outlined in paragraph "113" of this complaint including evaluating and/or treating Patrick; ensuring that Patrick's complaints were timely evaluated and/or treated; properly documented patient encounters; appropriately prescribed the medication; conducting the appropriate evaluations, based on Patrick's complaints; performing an electrocardiogram based on Patrick's complaints of chest pain; ordering and reviewing a chest x-ray when the Patrick first complained of chest pain; appropriately documenting and assessing Patrick's response to the medication provided; conducting the appropriate testing on Patrick following his complaints of chest pain; properly administering medication without full knowledge of Patrick's blood sugar. Patrick would not have suffered necrotizing pneumonia and would not have died prematurely.

116.   As a direct and proximate result of each breach of the standard of care and violations of Dr. Cipullo as outlined above, Patrick suffered diabetic ketoacidosis, septic shock, and pneumonia that led to necrotizing pneumonia with bacteremia

which ultimately resulted in his premature death. Patrick suffered unnecessary pain and suffering; emotional distress; mental anguish; unnecessary medical expenses—past, present, and future; lost wages or earning capacity; and other damages allowable under Michigan's Wrongful Death Act – MCL 600.2922. Although it is Plaintiff's position that noneconomic damage caps are unconstitutional but for purposes of this Complaint, Plaintiff believes that higher cap applies pursuant to MCL 600.1483.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgement in favor and against Defendants, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

### COUNT V – VICARIOUS LIABILITY VITAL CORE HEALTH SERVICES

117. Each of the above paragraphs are incorporated here.

118. At all times pertinent to the complaint, Dr. Cipullo, and other unidentified nurses were agents, apparent agents, ostensible agents, and/or employees of Vital Core Health Services. As such Vital Core Health Services is directly and vicariously liable for the negligent acts or omissions of these individuals for the reasons stated above.

119. As a direct and proximate result of each breach of the standard of care and violations of Dr. Cipullo as outlined above, Patrick suffered diabetic ketoacidosis, septic shock, and pneumonia that led to necrotizing pneumonia with bacteremia which ultimately resulted in his premature death. Patrick suffered unnecessary pain

23

and suffering; emotional distress; mental anguish; unnecessary medical expenses—past, present, and future; lost wages or earning capacity; and other damages allowable under Michigan's Wrongful Death Act – MCL 600.2922. Although it is Plaintiff's position that noneconomic damage caps are unconstitutional but for purposes of this Complaint, Plaintiff believes that higher cap applies pursuant to MCL 600.1483.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgement in favor and against Defendants, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

Respectfully submitted,

**VEN JOHNSON LAW, PLC**

Dated: August 7, 2026

By:/s/ *Christin M. DewBerry*
CHRISTIN M. DEWBERRY (P88249)
AYANNA D. HATCHETT (P70055)
VERNON R. JOHNSON (P39129)
CHRISTOPHER P. YATES (P41017)
VEN JOHNSON LAW, PLC
Attorneys for Plaintiffs
The Hudson Building
1240 Woodward Ave, Suite 525
Detroit, Michigan 48226
(313) 324.8300
ahatchett@venjohnsonlaw.com
cdewberry@venjohnsonlaw.com
venjohnson@venjohnsonlaw.com

24

25

## JURY DEMAND

Respectfully, Plaintiff demands a trial by jury. Fed. R. Civ. P. 38 (b).

Respectfully submitted,
**VEN JOHNSON LAW, PLC**

Dated: August 7, 2026

By: /s/ *Christin M. DewBerry*
CHRISTIN M. DEWBERRY (P88249)
AYANNA D. HATCHETT (P70055)
VERNON R. JOHNSON (P39129)
CHRISTOPHER P. YATES (P41017)
VEN JOHNSON LAW, PLC
Attorneys for Plaintiffs
The Hudson Building
1240 Woodward Ave, Suite 525
Detroit, Michigan 48226
(313) 324.8300
ahatchett@venjohnsonlaw.com
cdewberry@venjohnsonlaw.com
venjohnson@venjohnsonlaw.com